UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHARYN GRUENER,

        Plaintiff,

    v.                                        Case No. C-1-03-780

THE OHIO CASUALTY
COMPANY, et al.,

        Defendants.

**ORDER**

This matter is before the Court upon motions for summary judgment filed by plaintiff Sharyn Gruener (doc. 31) and by defendants The Ohio Casualty Insurance Company, et al. (Ohio Casualty) and Kevin Sims (doc. 29). The parties have filed proposed findings of fact and conclusions of law, which the opposing side has highlighted (docs. 37, 38).

**I. Introduction**

Plaintiff Sharyn Gruener brings this action against defendants Ohio Casualty, her former employer, and Kevin Sims, an employee of Ohio Casualty who was plaintiff's immediate supervisor during her employment as a PC Services Technician at the company. She invokes the Court's jurisdiction under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 210, and she invokes the Court's supplemental jurisdiction over her state law claim. Plaintiff claims that defendants discriminated

1

against her in violation of the ADA by not providing her reasonable accommodations for her alleged disabilities and by terminating her employment because of those disabilities. Plaintiff also claims that defendant Ohio Casualty violated the FLSA, 29 U.S.C. § 207, and the Ohio Minimum Fair Wage Standards, Ohio Rev. Code § 4111.01, et seq., by failing to pay her overtime for time worked in excess of 40 hours in any given workweek during which she was employed as a PC/LAN Administrator.

## II. Summary judgment motions

Defendants move for summary judgment on all claims against them. Defendants argue that (1) plaintiff's claim against Kevin Sims under the ADA must be dismissed because individual supervisors cannot be sued under the ADA; (2) plaintiff cannot make out a prima facie case of disability discrimination because she is not "disabled" within the meaning of the ADA and she is not "otherwise qualified" to perform the essential functions of her job position; and (3) plaintiff was an exempt administrative employee when she worked as a PC/LAN Administrator, so that she was not entitled to overtime pay.

Plaintiff moves for summary judgment in her favor on the grounds that she is a disabled person because she has physical impairments that deter her in major life activities such as walking, cooking, caring for herself, and working, plaintiff has a record of her disabilities, and defendants regarded her as disabled; Ohio Casualty's management staff has acknowledged that plaintiff was qualified to perform the duties of PC Services Technician because she had previously performed the same duties in her former position of PC/LAN Administrator; defendants violated the ADA as a matter of law by failing to consider reasonable accommodations for plaintiff; and there is no genuine issue of material fact that plaintiff was not

paid overtime for hours worked in excess of 40 hours in any given workweek, the PC/LAN position is a non-exempt position, and Ohio Casualty created the PC/LAN Administrator position as a hybrid classification specifically with the intent to avoid payment of overtime.

### III. Undisputed facts

1. Ohio Casualty hired plaintiff as an exempt Claims Specialist on December 1, 1998, after the company had acquired the commercial business lines of Great American Insurance Company, where plaintiff had worked since 1984.

2. In August of 1999, plaintiff applied for an exempt, newly-created PC/LAN Administrator position in the Workers Compensation (WC) Claims Department at Ohio Casualty's Forest Park, Ohio facility.

3. Plaintiff was selected for the position and became a PC/LAN Administrator in September of 1999. The move was a promotion for plaintiff. Her new annual salary was $33,900.

4. Plaintiff was the only PC/LAN Administrator in the WC Claims Department. She was responsible for maintaining a 60-person computer network and supporting all employees in the Cincinnati WC Claims Department and all the Field Adjustors for "computer/hardware software issues." She created all of the technical training materials for the WC Claims Department and a Y2K verification team checklist, reviewed vendor products and recommended which ones Ohio Casualty should purchase, researched products such as the doctor-doctor units and the nurse care case management programs, determined software and equipment needs, created new employee profiles and purged old files, created form letters and shortcuts, installed software, repaired equipment, and solved problems.

5. While in the position of PC/LAN Administrator, plaintiff was compensated on a salary basis for all hours worked.

6. Ohio Casualty did not maintain time records of the hours that plaintiff worked while she was in the position of PC/LAN Administrator.

7. Plaintiff performed work at home after her regularly scheduled work hours, met vendors on weekends, and completed training that required travel and more than 40 hours of work in a given workweek.

8. While holding the position of PC/LAN Administrator, plaintiff consistently received excellent performance evaluations.

9. After Ohio Casualty's Forest Park location closed and plaintiff's PC/LAN Administrator position was eliminated in July 2002, plaintiff transferred to a non-exempt PC Services Technician position at the company's Hamilton, Ohio location.

10. Plaintiff saw the job description for PC Services Technician before she accepted the job. The job description states, "Requires extensive physical exertion such as walking, standing, stooping, climbing or lifting materials or equipment, some of which may be heavy or awkward (in excess of 50 lbs)."

11. Plaintiff was an ideal candidate for the position of PC Services Technician because she had been performing PC Technician duties at the branch office in Forest Park while holding the PC/LAN Administrator position. The hiring manager, professional development manager, and the Information Systems department head all believe that plaintiff had the necessary qualifications for the PC Services Technician position.

12. Plaintiff was the only PC Services Technician at the Hamilton facility. She worked without direct supervision because her supervisors did not work in Hamilton.

13. Plaintiff's first supervisor was Diane Schwieterman. Kevin Sims became plaintiff's supervisor in October 2002.

14. Plaintiff had a record of medical impairments beginning in the early 1990s when she was diagnosed with degenerative joint disease (DJD), which ultimately resulted in double knee replacement surgery in 2001. Plaintiff had received accommodations for over a decade, starting with the provision of a high back chair to address plaintiff's neck discomfort in the 1990s.

15. Following her knee replacement surgery, plaintiff returned to work with physical restrictions against kneeling, stooping, and crawling.

16. Co-workers helped plaintiff plug in and carry heavy equipment from the time of her surgery until the date of her termination.

17. Plaintiff's physical limitations were not a secret to defendants. A doctor's note detailing plaintiff's medical restrictions had been given to Ohio Casualty following plaintiff's knee surgery and was maintained in her personnel file.

18. In her first meeting with Sims, plaintiff "mentioned" that she would have to start working flex hours in December. Plaintiff made the request because of "night vision" problems. Sims told plaintiff that he would talk to Steve Minor, Manager of Network Operations.

19. Minor told Sims that plaintiff could not work flex hours because she had to be at Hamilton to cover employee work hours.

20.　　When Sims and plaintiff met in November, she was "a little hazy" on what Minor had told her, so Sims told Minor to explain his decision to plaintiff.

21.　　Plaintiff called Sims. She "was upset about the fact that [Minor] wouldn't work with her on this and started mentioning things like ADA."

22.　　Sims reviewed plaintiff's personnel records to see if he could find anything about her night vision problem. Instead, he found a doctor's note dated October 30, 2001, stating that plaintiff had restrictions of "no squatting, no crawling, no kneeling."

23.　　Sims advised his manager, Karol Wolf. The two of them met with Sims and Gerrie Beland from Human Resources on December 11, 2002, to discuss the matter.

24.　　During meetings that defendants held regarding plaintiff, issues were identified regarding the ADA, in-house counsel was consulted, plaintiff was asked to provide updated medical restrictions, and a network engineer was asked about the frequency with which a PC Services Technician had to lift equipment.

25.　　On December 16, 2002, Beland and Sims spoke with plaintiff. It turned out that plaintiff had been asking her customers and co-workers to do certain tasks such as plugging in computers and lifting heavy monitors and that she had been doing so even before her doctor imposed the restrictions in December 2002. Plaintiff could not lift, move, or plug in computer equipment.

26.　　Beland asked plaintiff to provide medical certification for her vision problem and updated certification for her physical restrictions.

27. Plaintiff provided a note from her physician stating that she had permanent restrictions of no squatting, crawling, or kneeling and no lifting of more than 20 pounds or carrying more than 10 pounds. She also provided a short note from her optometrist stating that the optometrist had referred plaintiff to an eye specialist in 1999.

28. Ohio Casualty managers reviewed plaintiff's job description in conjunction with her medical restrictions and determined that plaintiff could not perform the essential functions of the PC Services Technician position with her physical restrictions.

29. The managers determined that it was unacceptable to have a PC Services Technician ask customers or co-workers to lift, move, or plug in equipment.

30. Defendants operate under the premise that "for any position we do have, an individual does have to perform all of the responsibilities . . ."

31. Ohio Casualty did not have a written policy on extending accommodations to employees with medical impairments.

32. Plaintiff was terminated on February 10, 2003. She had been performing PC Technician functions for over three years and had never been disciplined, written up for poor performance, or formally counseled.

33. Plaintiff has extensive computer and administrative skills.

34. Plaintiff has been working full-time since April 2004 for the Butler County Children's Services.

35.     Plaintiff can shower, get dressed, fix her hair, and brush her teeth. Plaintiff's medical impairments currently result in her needing assistance with foot care, shopping, doing laundry, and driving to evening appointments and activities because of her inability to stoop, carry heavy objects, and see during hours of darkness.

36.     Ohio Casualty's decision to terminate plaintiff was not based on her claimed vision problem.

### IV. Evidentiary matters

Defendants claim that certain evidence submitted by plaintiff does not satisfy the requirements of Fed. R. Civ. P. 56. Defendants allege that plaintiff's affidavit does not satisfy Rule 56 because the affidavit does not show that it was made on personal knowledge or affirmatively show that plaintiff is competent to testify to the matters therein. Defendants further contend that it appears that the affidavit may have been notarized outside of plaintiff's presence, and they claim that plaintiff's deposition testimony contradicts her affidavit. Defendants also move the Court to strike plaintiff's exhibits 6, 10, 12 and 13 on the ground that they are unauthenticated. Finally, defendants argue that plaintiff makes assertions without referring to any record evidence that is on point.

Plaintiff's affidavit is properly considered for purposes of resolving the summary judgment motions. It is not apparent from the record that the affidavit was improperly signed or notarized, the affidavit is obviously based on plaintiff's personal knowledge of her own limitations, and plaintiff is competent to testify as to those limitations.

The Court declines to strike the challenged exhibits from the record. Fed. R. Civ. P. 12(f), which governs a motion to strike, authorizes the Court to strike only "any redundant,

8

immaterial, impertinent, or scandalous matter" from a pleading and does not authorize the Court to strike evidence from the record. The Court will, however, disregard any exhibits that are unauthenticated and any assertions that find no support in the record when deciding the summary judgment motions.

### V. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. **Celotex Corp. v. Catrett**, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." **Anderson v. Liberty Lobby**, 477 U.S. 242, 248 (1986) (quoting **First Nat'l Bank of Arizona v. Cities Serv. Co.**, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. **Anderson**, 477 U.S. at 255 (citing **Adickes v. S.H. Kress & Co.**, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. **Anderson**, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. **Id.** at 249 (citing **Cities Serv.**, 391 U.S. at 288-289). If the evidence is merely colorable, **Dombrowski v. Eastland,** 387 U.S. 82, 84 (1967), or is not significantly probative, **Cities Serv.**, 391 U.S. at 290, judgment may be granted. **Anderson**, 477 U.S. at 249.

## VI. Opinion

### A. ADA claim

### 1. Applicable law

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). In order to state a claim under the ADA, the plaintiff must demonstrate "(1) that she is a disabled person within the meaning of the Act, (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment decision because of her disability." *McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 371 (6th Cir. 1997).

When the employer admits that it relied on the plaintiff's disability in making an adverse employment decision, the plaintiff bears the burden of showing that she (1) is "disabled," and (2) is "otherwise qualified" for the position despite her disability either "(a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996)). The employer then bears "the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer." *Id.*

The plaintiff has the initial burden of proposing an accommodation and showing that it is objectively reasonable. *Id.* at 1183. The term "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, [or] acquisition or modification of equipment or devices . . ." 42 U.S.C. § 12111(9). The ADA does

not require an employer to create a new position in order to accommodate a disabled employee or to shift an essential job function onto others. ***Hoskins v. Oakland County Sheriff's Dept.,*** 227 F.3d 719, 729 (6th Cir. 2000).

In determining whether an individual is disabled, an individualized inquiry must be made. ***Cotter v. Ajilon Servs., Inc.,*** 287 F.3d 593, 598 (6th Cir. 2002) (citing ***Sutton v. United Air Lines, Inc.,*** 527 U.S. 471, 483, 119 S.Ct. 2139 (1999)). An individual is considered "disabled" under the ADA if she:

> (A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) [has] a record of such an impairment; or
> (C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(2).

The regulations accompanying the ADA define a "physical or mental impairment" as,

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).

The term "substantially limits" is defined to mean,

(i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The regulations set forth the following factors to be considered in determining whether an individual is "substantially limited" in a major life activity:

(i) The nature and severity of the [claimant's] impairment;
(ii) The duration or expected duration of the impairment; and
(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

The Supreme Court has stated that the terms "substantially limits" and "major life activity" must be "interpreted strictly to create a demanding standard for qualifying as disabled." ***Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,*** 534 U.S. 184, 197, 122 S.Ct. 681, 691 (2002). Any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the ADA. ***Mahon v. Crowell,*** 295 F.3d 585, 590-91 (6th Cir. 2002).

To establish that an impairment substantially limits the ability to engage in the major life activity of working, the plaintiff must show that she is "significantly restricted in [the] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the

12

average person with comparable training, skills and abilities." *McKay,* 110 F.3d at 371 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). The "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*.

An individual may be regarded as disabled if "(1) a covered entity mistakenly believes that [she] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton,* 527 U.S. at 489, 119 S.Ct. at 2150. Accordingly, "the ADA protects those individuals 'regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties.'" *Rodgers v. Norfolk Southern Corporation,* 304 F.Supp.2d 961, 968 (S.D. Ohio 2003) (Sargus, J.) (citing *Ross v. Campbell Soup Company,* 237 F.3d 701, 706 (6th Cir. 2001)). In determining whether an employer regarded an individual as being disabled, it is necessary to "look to the state of the mind of the employer." *Ross,* 237 F.3d at 706. "[M]embership in the protected class becomes a question of intent," a question which is "rarely susceptible to resolution at the summary judgment stage." *Id.*

The Sixth Circuit in *Ross* recognized the difficulty a plaintiff faces in proving that her employer regarded her as substantially limited in the major life activity of working:

> Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind. Thus, proving the case becomes extraordinarily difficult. Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs. As it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations, the plaintiff's task becomes even more difficult. Yet the drafters of the ADA and its subsequent interpretive regulations clearly intended that plaintiffs who are mistakenly regarded as being unable to work have a cause of action under the statute. . . In cases such as this one, where there is substantial evidence that an individual's medical status played a significant role in an employer's decision to fire that individual, combined with evidence that the employer concocted a pretextual justification for that firing, the need for more extensive factual inquiry into whether the employer engaged in unlawful discrimination is especially acute.

*Id.* at 709. The "substantial evidence" to which the Court in *Ross* referred included (1) an interoffice managerial memo by one of the plaintiff's supervisors asking, "When can we bring this problem person to a termination status [?] P.S.- - Back Case," and (2) evidence that after the plaintiff's fifth back injury, his supervisors invited him to retire, placed him on probation, gave him a sharply negative performance review, and assigned him significantly higher sales quotas.

The general rule in the Sixth Circuit is that a weight restriction alone is not considered a disability under the ADA. *See Olds v. United Parcel Service, Inc.,* 127 Fed. Appx. 779, 782, 2005 WL 742804 * 3 (6th Cir. April 1, 2005) (unpublished decision); *McKay,* 110 F.3d at 373 (holding that the plaintiff's inability to lift more than ten pounds would not significantly restrict her ability to perform a broad range of jobs in various classes); *Vass v. The Riester & Thesmacher Co.,* 79 F. Supp.2d 853, 860 (N.D. Ohio 2000) (finding that individual who in

14

addition to being able to perform other activities could lift objects under 25 pounds was not disabled under the ADA).

**2. Resolution of the ADA claim**

Plaintiff does not dispute that individual supervisors may not be held liable under the ADA, and the law so provides. *See Sullivan v. River Valley School Dist*., 197 F.3d 804, 808 n. 1 (6th Cir. 1999) ("individual supervisors who do not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases"); *Wathen v. General Electric,* 115 F.3d 400, 404-05 n. 6 (6th Cir.1997) (holding that an individual supervisor may not be held personally liable under Title VII and noting that the Title VII and ADA liability schemes are similar in this regard). Defendant Sims is therefore entitled to summary judgment on plaintiff's ADA claim against him.

Ohio Casualty admits that it relied upon plaintiff's alleged DJD disability in making the termination decision. Plaintiff therefore bears the burden of proving that (1) she has a disability, and (2) that she is "otherwise qualified" for the PC Services Technician job despite her disability either with or without a reasonable accommodation or with an alleged "essential" job requirement eliminated. Upon careful review of the record, and for the reasons stated below, the Court finds that plaintiff has come forward with sufficient evidence to raise genuine issues of material fact on each of these elements of her ADA claim so as to preclude a grant of summary judgment in favor of defendant Ohio Casualty on the claim. By the same token, because there are genuine issues of material fact regarding these elements, plaintiff is not entitled to summary judgment in her favor on the ADA claim.

First, plaintiff has submitted evidence that raises an issue as to whether she is disabled

within the meaning of the ADA. In her affidavit dated November 28, 2004 (plaintiff's exh. 7), plaintiff explains how the alleged permanent restrictions resulting from her knee replacement surgery in 2001 affect her daily activities:

> The impairments impact on my ability to work and also to carry things while walking, maintaining certain aspects of personal hygiene, i.e., getting up and down in the bathtub, giving my feet proper care. I need assistance with grocery shopping and cooking as those tasks often involve lifting and reaching.
>
> I can no longer perform manual and physical tasks such as rearranging my furniture, carrying laundry to and from one floor to another, picking up my computer and/or monitor, doing shopping by myself, i.e., grocery shopping or any other shopping that would entail lifting and/or carrying anything over my weight restrictions. I cannot do physical tasks such as picking up items from the floor that would require being able to kneel, squat or crawl, i.e., something rolling under a chair or table; reaching something at the back of a kitchen cabinet or closet. I am unable to perform many types of exercises to become more physically fit, and cannot get down on the floor to play with my grandchildren. I cannot clean the bathtub, or the toilets around the bottom as those functions would necessitate kneeling or squatting. In general, getting up and down from a low setting is restricted such as normal commodes, low slung chairs or couches. Simple tasks such as plugging and unplugging power cords into electrical [outlets] and other activities necessary for cleaning my house and my own personal care are precluded if the task requires crawling or kneeling on the floor.

Plaintiff stated that she has modified her home to include means of assisting herself in lowering and raising herself from low settings, such as by placing her couch on bricks and using the sink/vanity cabinet and a walker to push against so as to facilitate rising from low fixtures in her bathroom. Plaintiff further stated that her poor night vision keeps her from driving after dusk and/or before dawn, so that she is basically housebound during the winter months, and that she keeps lights on all night in portions of her house to assist her in moving safely about in the dark.

   This evidence submitted by plaintiff is not sufficient to permit a finding that her vision impairment constitutes a disability within the meaning of the ADA. It is sufficient, however, to raise an issue as to whether the restrictions imposed as a result of plaintiff's DJD are so severe as

to substantially limit plaintiff's ability to perform one or more major life activities. This is an issue for the trier-of-fact to resolve and one that cannot be determined on summary judgment.

Similarly, the issue of whether plaintiff was otherwise qualified for the PC Services Technician position despite her alleged DJD disability cannot be resolved on summary judgment. Although it is undisputed that plaintiff was unable to plug cords into electrical outlets and to lift heavy monitors, the evidence discloses that there are issues of fact as to whether these were essential functions of plaintiff's job, how often it was necessary for plaintiff to perform these functions, whether defendant may have been able to accommodate plaintiff by allowing her to continue to perform these functions with assistance from one or more co-workers or with some other accommodation, whether such an accommodation would be reasonable, and whether such an accommodation would pose an undue hardship on the company. Specifically, there is evidence indicating that plaintiff had been performing the PC Services Technician job with some degree of assistance for several months, that she had not received any job counseling, discipline, or warnings before she was terminated so as to indicate that her ability to perform her job was compromised by her physical restrictions, that defendant did not raise any issues regarding plaintiff's job performance and did not take an adverse job action against plaintiff until after she had requested an accommodation for her night vision problem, and that defendant did not explore the possibility of accommodating plaintiff in any manner. In view of this evidence and the issues it raises, summary judgment in favor of Ohio Casualty is not warranted on the ground that plaintiff has failed to come forward with sufficient evidence to satisfy her burden of proof on the "otherwise qualified" element of her claim. Similarly, issues of fact as to this element preclude a grant of summary judgment in favor of plaintiff on her ADA claim.

**B. Claim under the FLSA**

Defendants move for summary judgment on plaintiff's overtime wage claims on the ground that she was exempt from the applicable overtime pay requirements during the relevant time frame.[1] Defendants argue that Sims cannot be held liable on these claims because he was not plaintiff's supervisor during the relevant time period. Plaintiff disputes that she was an exempt employee, but she does not dispute that Sims cannot be held liable on the wage claims.

Section 7(a) of the FLSA requires an employer to compensate an employee who works over forty hours a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Section 13(a) of the FLSA exempts from the overtime pay requirement any employee who is employed "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). This exemption is to be "narrowly construed against the employers seeking to assert [it]." ***Douglas v. Argo-Tech Corp.***, 113 F.3d 67, 70 (6th Cir. 1997) (citing ***Arnold v. Ben Kanowsky, Inc.***, 361 U.S. 388, 392, 80 S.Ct. 453, 456 (1960); ***Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections***, 992 F.2d 82, 83 (6th Cir. 1993)). "Application of the exemption is limited to those circumstances plainly and unmistakably within the exemption's terms and spirit." ***Id.*** (citing ***Arnold***, 361 U.S. at 392, 80 S.Ct. at 456). The burden is on the employer to prove that the exemption applies to the employee in question. ***Id.*** (citing ***Michigan Ass'n of Governmental Employees***, 992 F.2d at 83).

The governing regulations that were in effect during the relevant time period provided a "short test" for the overtime exemption applicable to employees who are paid "on a salary or fee

---

[1] The parties cite to federal law governing the payment of overtime wages and draw no distinction between federal and state law on this issue. The Court will therefore analyze the claims under the federal law cited by the parties.

basis at a rate of not less than $250 per week." See 29 C.F.R. § 541.2(e)(2). Under this test, the employer must prove that: (1) it paid the employee on a salary or fee basis; (2) the employee's primary job duties consisted of non-manual work directly related to the management policies or general business operations of the employer; and (3) the employee's job duties required him to customarily and regularly exercise discretion and independent judgment. *Id.*

The parties dispute whether plaintiff's job required the regular exercise of discretion and independent judgment, and the record discloses that there are genuine issues of material fact in this regard. Accordingly, neither Ohio Casualty nor plaintiff is entitled to summary judgment on the FLSA claim.

## VII. Conclusion

In accordance with the foregoing, plaintiff's motion for summary judgment (doc. 31) is **DENIED.** Defendants' motion for summary judgment (doc. 29) is **DENIED** as to plaintiff's claims against defendant Ohio Casualty and is **GRANTED** as to all claims against defendant Sims. Defendant Sims is **DISMISSED** from the lawsuit with prejudice at plaintiff's cost. The case will proceed to trial on the claims against defendant Ohio Casualty pursuant to the schedule previously established by the Court.

**IT IS SO ORDERED.**

S/ Herman J. Weber
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT

J:\HJWA\03-780adaPUB.wpd