UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHARYN GRUENER,
    Plaintiff,                                     Civil Action No. 1:03-cv-780

vs.

THE OHIO CASUALTY INSURANCE
COMPANY,                                    **ORDER**
    Defendant                                 (Hogan, M.J.)

      Plaintiff Sharyn Gruener filed this action pursuant to the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, claiming that defendant Ohio Casualty Insurance Company (OCIC) failed to accommodate her disability and terminated her employment in February 2003 in violation of the ADA. A jury trial was held on August 23 through August 29, 2005. The jury returned a verdict for defendant, finding plaintiff was not "disabled" within the meaning of the ADA. (Doc. 77). This matter is before the Court on plaintiff's motion for a new trial pursuant to Fed. R. Civ. P. 59(a) (Doc. 80), defendant's memorandum in opposition (Doc. 82), and plaintiff's reply memorandum. (Doc. 83).

      Pursuant to Rule 59(a), a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The Sixth Circuit has determined that in general, a new trial is warranted when a jury has reached a "seriously erroneous" result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias. *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir.), *cert. denied*, 519 U.S. 935 (1996). When the request for a new trial is premised on the ground that the verdict was against the weight of the evidence, the Court may not grant a new trial "unless that verdict was unreasonable." *Id*. at 1047. "[I]f a reasonable juror

could reach the challenged verdict, a new trial is improper." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000), citing *Holmes*, 78 F.3d at 1048. The Court is "not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Barnes,* 201 F.3d at 821 (quoting *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)). Thus, if the jury verdict is one that a jury could reasonably make, the Court must deny the motion for a new trial even if the Court might have reached a different conclusion were it the trier of fact. *Wayne v. Village of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994), *cert. denied*, 514 U.S. 1127 (1995).

In the instant case, the jury determined that plaintiff did not have a "disability" as defined by the Americans with Disability Act. (Doc. 77). Plaintiff contends this finding is contrary to the weight of the evidence. She states she produced "conclusive and undisputed evidence" that she was in fact disabled as to manual and physical tasks and as to working. In terms of manual tasks, plaintiff cites to her testimony showing she was limited in her ability to climb stairs, grocery shop, place items in a cupboard, pick items off the floor, and clean the commode. Plaintiff also testified she placed her sofa on bricks to help her rise from the sofa. In regards to her claim that she was disabled as to working, plaintiff cites to evidence showing she was limited to light work and had problems finding a job following her termination with OCIC given her medical restrictions. She also cites to Dr. Berla's testimony that plaintiff was precluded from all jobs classified as medium or heavy and from light jobs that required repetitive squatting, kneeling or stooping. In addition, plaintiff cites to Dr. Manges' testimony that plaintiff was limited to light and sedentary work, would likely be unable to work her way to a complimentary position in pay for many years, and had a "vocational disability." Plaintiff argues there is clear evidence that she could not and did not perform work that required stooping, kneeling, squatting or lifting for which she was restricted.

The Court finds that the evidence presented at trial was sufficient to support the jury's determination that plaintiff was not disabled within the meaning of the ADA. In this regard, the jury was instructed that the term "disability" means a physical impairment that substantially limits one of the major life activities, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working. (Doc. 76 at 17). *See Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir. 2002). The jury was also instructed that a major life activity is one which is "of central importance to daily life" and that plaintiff claimed limitations in the major life activities of performing manual tasks, caring for herself, and working. (Doc. 76 at 18). *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). An impairment that substantially limits the "major life activity" of performing manual tasks must prevent or severely restrict plaintiff from doing activities that are of central importance to most people's daily lives. (Doc. 76 at 19). *See Id.* The Supreme Court has stated that the terms "substantially limits" and "major life activity" must be "interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197.

Neither party disputes that plaintiff suffered from a physical impairment of her knees resulting in limitations on her ability to squat, crawl, kneel and lift over twenty pounds. Nevertheless, the existence of a physical impairment alone is insufficient to support a finding of a disability for the purposes of the ADA. *See McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 373 (6th Cir. 1997) ("[N]ot every impairment qualifies as a disability protected by the ADA."). The jury could have reasonably found that plaintiff was not substantially limited by her physical impairment from performing self-care in view of the evidence that plaintiff was still able to shower, dress, fix her hair and brush her teeth by herself. The only self-care task she was unable to perform was caring for her feet which the jury could have found did not substantially limit her ability to care for herself. In terms of manual tasks, the jury could reasonably have decided that plaintiff was not prevented or severely restricted in her ability to perform tasks that

3

are central to most people's lives. The evidence showed plaintiff was capable of typing, working on a computer, driving, cooking, loading the dishwasher, and mopping the floor. While plaintiff also testified she was unable to use the bathtub to take a bath, carry laundry up from the basement, and stoop to get food from the bottom of the refrigerator or shoes out of her closet, and had difficulty arising from a couch or the commode, the jury could have reasonably determined that these were not tasks of central importance to most people's daily lives. *See Toyota*, 534 U.S. at 202 (limitations on sweeping, dancing, self-dressing, playing with her children, gardening and driving were insufficient to establish a manual task disability impairments; Court found significant that the plaintiff was still able to "brush her teeth, wash her face, bathe, tend to her flower garden, fix breakfast, do laundry, and pick up around the house"). Thus, the evidence was sufficient to support the jury finding that plaintiff was not disabled as to physical and manual tasks.

The jury was also instructed that "an impairment that substantially limits the 'major life activity' of working must significantly restrict plaintiff's access to a substantial class or broad range of jobs, as determined by comparing plaintiff's access to jobs with the access available to a non-impaired individual with similar training and experience as plaintiff, looking specifically to the labor market in plaintiff's geographic vicinity. The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working." (Doc. 76 at 19). *See McKay*, 110 F.3d at 372. Under the regulations, a person's ability to work is substantially limited for the purposes of the ADA if he or she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). In addressing whether an individual is "substantially limited" in the major life activity of working, the Supreme Court in *Sutton* stated:

To be substantially limited in the major life activity of working, then, one must be

> precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

527 U.S. at 492. In determining whether an individual is precluded from a substantial class or broad range of jobs, courts must compare the individual's "access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the claimant's geographic vicinity." *Mahon*, 295 F.3d at 591, citing *Sutton*, 527 U.S. at 491-92; *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 253-54 (6th Cir. 2000). Generally, a weight restriction alone is not considered a disability under the ADA. *See Olds v. United Parcel Service, Inc.*, 127 Fed. Appx. 779, 782, 2005 WL 742804 *3 (6th Cir. April 1, 2005) (unpublished decision); *McKay*, 110 F.3d at 373 (holding that the plaintiff's inability to lift more than ten pounds would not significantly restrict her ability to perform a broad range of jobs in various classes).

Plaintiff argues that her impairment precluded a broad range of jobs, citing to evidence showing she was unable to perform any medium or heavy jobs as well as certain light jobs. However, the Sixth Circuit rejected a similar argument in *McKay,* 110 F.3d 369:

> [P]laintiff in this case says the evidence regarding her physical impairment compels a conclusion that she is significantly restricted in her ability to perform any medium or heavy work. While she did present expert testimony to that effect, the same expert, when pressed, acknowledged that the positions she held at Toyota did not involve medium or heavy work. He also conceded that there were a broad range of jobs that she could perform. Since plaintiff's work history at Toyota involved only light work, and *she made no showing that she ever was able to perform medium or heavy work*, one is hard pressed to comprehend how she could have been regarded as a "qualified individual" with respect to medium and heavy work. . . . [H]er evidence supports a conclusion that her impairment disqualifies her from only the narrow range of assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds. It follows that her limited impairment would not significantly restrict her ability to perform a broad range of jobs in various classes.

5

*McKay,* 110 F.3d at 373 (emphasis added).  *See also Doren v. Battle Creek Health System*, 187 F.3d 595, 598 (6th Cir. 1999).  Similarly, plaintiff failed to present evidence she was qualified for or sought employment in anything other than "light work."  While plaintiff presented evidence that her medical restrictions against squatting, crawling, kneeling, lifting more than 20 pounds, and carrying more than 10 pounds disqualified her from "some" light jobs, plaintiff did not present evidence on the number or percentage of light jobs eliminated or that such jobs were available in the geographic area of Cincinnati.  Morever, plaintiff failed to present evidence that she was limited from working over half the jobs for which she would otherwise be qualified.  In *Mahon*, the Sixth Circuit held that an employee who suffered a back injury was not substantially limited in the major life activity of work even though an expert found that the employee "suffered a 47% loss of access to his job market." 295 F.3d at 591.  The court reasoned, "We would be using a less-than-demanding standard were we to find [the employee] substantially limited in working when he is still qualified for over half the jobs he was qualified for before his injury." *Id*. at 592.  Therefore, the jury could reasonably have concluded that plaintiff was not substantially limited in her ability to work and was not disabled.

To the extent plaintiff now argues the experts agreed plaintiff had a "work disability" or was "vocationally disabled," this Court has already ruled that such expert opinions provide an assessment of plaintiff's future capacity to perform work and earn money, not an opinion as to whether plaintiff is "disabled" under the ADA for the reasons set forth in the Court's ruling on the motion in limine. (Doc. 61).  Nor has plaintiff provided authority to support her assertion that the proper analysis under the ADA is whether jobs are equivalent in pay.  Rather, the Sixth Circuit standard is whether or not a plaintiff can perform over half the jobs for which she is qualified. *Mahon*, 295 F.3d at 592.  Therefore, this evidence does not compel a finding that a new trial is warranted under the circumstances of this case.

Plaintiff also contends she is entitled to a new trial because the Court failed to instruct the

6

jury on two of the legal definitions of "disability."  An individual is considered "disabled" under the ADA if she: (A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) [has] a record of such an impairment; or (C) [is] regarded as having such an impairment. 42 U.S.C. § 12102(2).  Plaintiff submitted proposed jury instructions on both "Record of a Disability" and "Regarded as Disabled." (Doc. 69, Proposed Instructions Nos. 12, 14).  The Court declined to give the requested instructions and plaintiff timely objected.

A court's refusal to give requested jury instructions is reversible error if "(1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; (3) the failure to give the instruction impairs the requesting party's theory of the case." *Webster v. Edward D. Jones & Co., L.P.,* 197 F.3d 815, 820 (6th Cir. 1999). "Jury instructions are not prejudicial if they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its determination." *Whittington v. New Jersey Zinc Co.*, 775 F.2d 698, 700 (6th Cir. 1985) (citing *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1181 (6th Cir. 1983).  "To effectively charge a trial court with failure to provide an instruction, one must first show the presence of evidence in the record sufficient to support submission of that instruction.  Absent such evidence, nothing is present upon which the court could have based the refused instructions." *Bucyrus-Erie Co. v. General Products*, 643 F.2d 413, 420 (6th Cir. 1981) (citations omitted).  *See also Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 592 (6th Cir. 1986) ("It is error, however, to instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue.").

The Court finds plaintiff has not been unfairly prejudiced by the Court's refusal to give the proposed instructions because the trial evidence did not support the submission of these instructions.  First, plaintiff failed to establish she had a record of an impairment that

substantially limits one or more of the major life activities. "A record of an impairment means an individual has 'a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002), quoting 28 C.F.R. § 35.104(3). As explained in the Interpretive Guidance on Title I of the Americans with Disabilities Act set forth in the federal regulations:

> The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability. For example, this provision protects former cancer patients from discrimination based on their prior medical history. . . . This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. . .

29 C.F.R. Pt. 1630, App. § 1630.2(k)(2005). Thus, ADA claims based on a record of impairment require a showing of a mental or physical impairment that substantially limits one or more major life activities. *See Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1229 (11th Cir. 1999); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 645 (2nd Cir. 1998).

Plaintiff argues that she had a record of disability because there was a copy of her medical restrictions in her personnel file upon which defendant relied in determining she could not perform the essential functions of her job. However, the "record" upon which plaintiff relies, *i.e.*, the statement from her treating doctor limiting her to light work, does not show plaintiff's physical limitations substantially limited one or more major life activities. Moreover, the jury found her actual impairments were not substantially limiting. Therefore, the failure to give plaintiff's proposed instruction on "Record of Disability" could not have affected the jury's verdict or impaired plaintiff's theory of the case.

Second, plaintiff failed to establish she was regarded as disabled by defendant. In

8

determining whether an individual may be regarded as having a disability, the Court must consider whether "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489. Under either scenario, the plaintiff must show the employer harbored a misperception about him: that the employer believed the plaintiff had a substantially limiting impairment that he in fact did not have or believed that the plaintiff had a substantially limiting impairment when, in fact, the impairment was not so limiting. *Id*. *See also Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001). Accordingly, "the ADA protects those individuals 'regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties.'" *Rodgers v. Norfolk Southern Corporation*, 304 F. Supp.2d 961, 968 (S.D. Ohio 2003) (Sargus, J.), citing *Ross*, 237 F.3d at 706. The Sixth Circuit in *Ross* stated it is difficult to prove that an employer regarded the employee as substantially limited in the major life activity of working because the plaintiff must demonstrate not only that his employer thought he was disabled, but also that his employer thought his disability would prevent him from performing a broad class of jobs. *Ross*, 237 F.3d at 709. A question of fact was presented on this issue in *Ross* because there was substantial evidence[1] that the plaintiff's medical status played a significant role in his discharge, as well as evidence that the employer concocted a pretextual justification for the discharge. *Id*.

        Plaintiff contends that defendant regarded plaintiff as disabled because it "terminated her

---

[1] The "substantial evidence" to which the *Ross* Court referred included (1) an interoffice managerial memo by one of the plaintiff's supervisors asking, "When can we bring this problem person to a termination status [?] P.S.- - Back Case," and (2) evidence that after the plaintiff's fifth back injury, his supervisors invited him to retire, placed him on probation, gave him a sharply negative performance review, and assigned him significantly higher sales quotas.

employment as a result of what [defendant] perceived as her disability, whether or not Plaintiff's physical impairments rose to the level of the statutory definition of disability" (Doc. 83 at 3-4) and readily admitted the termination was based on plaintiff's "inability to perform the essential functions of her position." (Doc. 83 at 5, citations omitted).

Unlike *Ross*, the evidence presented in this case was not sufficient to support a jury finding that defendant believed plaintiff had a disability that would prevent her from performing a broad class of jobs. The evidence does not show that defendant held any "mistaken" belief about plaintiff's abilities. *Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir. 2002). The evidence bearing on defendant's perception of plaintiff's impairment indicates that its perception was not based upon speculation, stereotype, myth, or mistaken belief about plaintiff's abilities, but upon the specific restrictions placed upon plaintiff by her treating physician. *See Mahon,* 295 F.3d at 592 (in following specific recommendations of employee's treating physician to account for his injury, defendant was not regarding him as disabled). The treating physician's written restrictions gave no indication that plaintiff's major life activities were substantially limited but indicated that plaintiff was restricted to light duty work with limitations on squatting, crawling, kneeling, and lifting more than 20 pounds. The evidence showed the only position for which defendant considered plaintiff unqualified was her PC Services Technician job which required her to lift in excess of 50 pounds, contrary to the restrictions imposed by her doctor. Plaintiff remained eligible for rehire subsequent to her termination and there was evidence showing she was encouraged to apply for other positions within the company. Because the evidence was insufficient to support a jury finding that plaintiff was "regarded as having" a disability within the meaning of the ADA, the Court was justified in refusing to give the requested instruction.

For the foregoing reasons, the Court declines to grant a new trial in this matter. Accordingly, plaintiff's motion for a new trial (Doc. 80) is **DENIED**.

    **IT IS SO ORDERED.**

Date: 10/31/2005    s/Timothy S. Hogan
                                                           Timothy S. Hogan
                                                           United States Magistrate Judge